# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RENEE T. BRENNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 10 C 07779 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | Jeffrey T. Gilbert |
| of the Social Security Administration, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Claimant Renee T. Brenner ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision by Respondent Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment [Dkt.# 15, 22]. Claimant argues that the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits should be reversed or, alternatively, that the order of the ALJ should be vacated and remanded to the Social Security Administration ("SSA") for further proceedings. Respondent contends the Commissioner's decision should be sustained.

Claimant raises the following issues in support of her motion: (1) whether there is substantial evidence to support the ALJ's finding that Claimant performed substantial gainful activity ("SGA") after November 1, 2006; (2) whether the ALJ gave insufficient

weight to the findings of a functional capacity evaluation ordered by a treating physician; (3) whether the ALJ properly analyzed Claimant's credibility; and (4) whether the ALJ failed to adequately consider the effects of Claimant's medication. For the reasons set forth below, Claimant's motion for summary judgment [Dkt.#22] is denied, Respondent's Motion [Dkt.#15] is granted, and the decision of the Commissioner is affirmed.

## I. BACKGROUND

### A. Procedural History

Claimant filed an application for disability benefits on May 5, 2008. R. 101-02. She alleged a disability onset date of November 1, 2006. R. 110, 10. Claimant was last insured on March 31, 2008. R. 110. The SSA initially denied her application on July 11, 2008. R. 54. Claimant then filed a request for reconsideration on August 16, 2008, which the SSA denied on September 26, 2008. R. 63, 66. On October 13, 2008, Claimant requested a hearing by an ALJ. R. 69.

On September 23, 2009, Claimant appeared with her attorney George G. Weber and testified at a hearing before ALJ Joel G. Fina. R. 26. Vocational expert Thomas Guslof also appeared and testified at the hearing. R. 26. No medical expert testified at the hearing.

On November 6, 2009, the ALJ rendered a decision finding that Claimant was not disabled under the Social Security Act from the alleged time of onset through March 31, 2008, the date she was last insured. R. 14–19. Specifically, the ALJ found that Claimant had performed SGA after the claimed date of disability onset, had the ability to perform

her former work as bookkeeper from 2006 until the time of the decision, and "had the ability to perform a full range of sedentary work at all times relevant to [the] decision." R. 18.

On January 8, 2010, Claimant filed a request for review of the ALJ's decision to the Appeals Council. R. 6. On October 7, 2010 the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. R. 1–3. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 406(g).

**B.      Hearing Testimony – September 23, 2009**

**1. Claimant Renee T. Brenner**

At the time of the hearing, Claimant was 59 years old, divorced, and living with her teenage son. R. 29. Claimant is a high school graduate and completed one and a half years of college. R. 30.

Claimant testified that she was last employed as a bookkeeper for her ex-husband's dental practice. R. 30. She continued this employment through either November or December 2006 when she became too ill to continue.[1] R. 30. As a bookkeeper, Claimant maintained a ledger of operating costs on a computer program, paid bills, and created reports to be given to an accountant for tax purposes. R. 32. Claimant testified she worked approximately 200 hours a year and received $11,000 in 2005 and 2006. R. 17, 33.  In a pre-hearing statement, however, Claimant said she spent

---

[1] Claimant testified that she continued to work as a bookkeeper through December 2006, but she later testified that she became too ill to work on November 1, 2006. R. 34-35. In her petition for review by the ALJ and in subsequent appeals Claimant has consistently maintained a disability onset date of November 1, 2006. R. 10, 19.

no more than two work days a year on her bookkeeping job. R. 117. She has not made any attempt to find work since the end of her bookkeeping job due to her illness. R. 33. At the time of the hearing, Claimant's only sources of income were maintenance and child support from her ex-husband. R. 36.

Claimant testified that she suffers from colitic arthritis, rheumatoid arthritis, primary sclerosing cholangitis, cirrhosis, sciatica, and ulcerative colitis. R. 35, 38-40. She further testified that she suffers from constant pain in her knees, foot, shoulder, and hip. R. 37. Claimant also frequently feels nauseous, feverish, and tired. R. 41. She testified that her conditions would prevent her from working as a bookkeeper eight hours a day, five days a week because she cannot sit for extended periods and has to take frequent, lengthy bathroom breaks. R. 40-41.

Claimant testified that she is able to care for her personal needs but only with difficulty. R. 36. She needs to take medication in order to be able to get out of bed. R. 42. She needs to lie down after taking a shower. R. 42. She has trouble grocery shopping and is only able to get to the store some days. R.37. She testified that she could only walk two blocks without having to stop to rest. R.37. Claimant is able to attend her son's football games where she sits in the bleachers for two and a half hours. R. 42. However, she felt the need to resign her position as treasurer of the Parent Teacher Organization at her son's school due to her illness. R. 43.

Claimant stated that she is taking Prednisone for her colitis and Advil for her pain. R. 39, 41. She did not note any side effects of these medications.

## 2. Vocational Expert Thomas Guslof

Thomas Guslof testified at the hearing as a vocational expert ("VE"). He described Claimant's past work as a bookkeeper. R. 47. He testified that her past work would be categorized as sedentary and skilled. R. 47. He stated that jobs similar to Claimant's past work as a bookkeeper were available in the national economy even if an individual could only work ten hours a month. R. 47–48.

The VE noted that an individual who had to miss two days per week of work due to illness would not be able to perform even flexible hours employment as customarily performed in the national economy because an employee might be required to work on specific days. R. 50–51. The VE testified, however, that an individual with that limitation would be able to perform such a job as actually performed by Claimant during her time as a bookkeeper. R. 50–51.

The VE further testified that a hypothetical person of the same age, education, work experience, and skillset as Claimant would be able to perform the work of a bookkeeper as Claimant previously performed it. R. 48.

## C.     Medical Evidence

### 1. Gastrointestinal Health Associates Records

Dr. Jeff Victor first saw Claimant around March 2005. R. 223. At that time, he diagnosed her with ulcerative colitis[2] based on a colonoscopy. R. 223. He also diagnosed

---

[2] "Ulcerative colitis is a type of inflammatory bowel disease . . . that affects the lining of the large intestine (colon) and rectum." U.S. National Library of Medicine, *Ulcerative Colitis*, A.D.A.M. MEDICAL ENCYCLOPEDIA, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001296/ (last revised Oct. 16, 2011).

Claimant with primary sclerosing cholangitis.[3] R.223. Dr. Victor then referred Claimant to several specialists. R. 224-29.

### 2. Delnor Hospital Records

The first record of Claimant being treated at Delnor Hospital dates from March 22, 2005. R. 289. At that time, Claimant underwent biopsies of her colon. R. 289. Those biopsies showed signs of chronic active colitis and mild inflammation. R. 289.

Dr. Lee Lichtenberg treated Claimant in 2006. R. 193. Dr. Lichtenberg noted that Claimant had severe joint pain associated with ulcerative colitis and complicated by sclerosing cholangitis. R. 193. Dr. Lichtenberg prescribed prednisone to treat the inflammatory arthritis. R. 193

On March 14, 2007, Claimant's colon was biopsied. R. 281. The test found that the colonic tissue showed signs of chronic colitis but that the colitis was currently inactive. R. 282. Dr. Victor recorded at that time that Claimant had "significant improvement" from her initial claims of colitis. R. 302.

On August 4, 2008 Claimant underwent a colonoscopy at Delnor Hospital in Geneva, Illinois. R. 188. In his report on the procedure, Dr. Jeffrey Victor observed that Claimant's colitis seemed "quiescent." He noted only mild inflation of colon tissue. R. 318-19. The rest of the colon was "unremarkable." R. 319. Dr. Victor opined that these observations were consistent with a history of ulcerative colitis and "extremely mild

---

[3] "Sclerosing cholangitis refers to swelling (inflammation), scarring, and destruction of the bile ducts inside and outside of the liver." U.S. National Library of Medicine, *Sclerosing Cholangitis*, A.D.A.M. MEDICAL ENCYCLOPEDIA, www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001330/ (last revised Aug. 11, 2011).

nonspecific inflammation." R. 319. Three biopsies taken during the colonoscopy showed no active inflammation. R. 321. Dr. Victor noted that he did not understand why Claimant was having such severe pain and fatigue and referred her to a rheumatologist. R. 329.

On July 9, 2009 Claimant's pelvis was x-rayed. Dr. James Fister, the doctor reviewing the results, stated that she had "severe arthritic change" in her right hip consistent with rheumatoid arthritis. R. 350. He also noted similar changes in her left hip although it was not yet symptomatic. R. 350. He gave Claimant a cortisone injection and informed her that she would eventually need a hip replacement. R. 350.

### 3. University of Chicago Hospital Records

On February 9, 2007, Claimant visited Dr. Sunanda Kane on referral from Dr. Victor. R. 197. Dr. Kane diagnosed Claimant with arthralgias associated with colitis and prescribed methotrexate. R. 197. Dr. Kane also informed Claimant that she would need to have colonoscopies annually due to her colitis and cholangitis. R. 198.

On April 11, 2007, Claimant underwent an endoscopic retrograde cholangiopacreatography[4] ("ERCP") under the supervision of Dr. Charles Dye. R. 202-03. At that time, Claimant's liver was biopsied. R. 210. The results of the ERCP indicated, but did not confirm, that Claimant was afflicted with primary sclerosing cholangitis. R. 214.

---

[4] An ERCP is "a procedure that combines upper gastrointestinal (GI) endoscopy and x-rays to treat problems of the bile and pancreatic ducts." National Institute of Diabetes and Digestive and Kidney Diseases, *ERCP*, MEDLINEPLUS, www.digestive.niddk.nih.gov/ddiseases/pubs/ercp (last visited Jan. 20, 2012).

### 4. Greater Valley Medicine Records

The first record of Claimant visiting Dr. Lori Zimmers, her internist, is from March 8, 2007. R. 237–38. Claimant complained of leg pain in both legs. R. 237. Dr. Zimmers prescribed Flexeril for the pain. R. 237. Claimant next visited Dr. Zimmers on August 1, 2007. R. 239. At that time, Claimant noted that her "colitis [was] doing ok," but that her arthritis was bothering her. R. 239. Finally, Claimant visited Dr. Zimmers on November 16, 2007. R. 235. She complained of pain in her right leg from her hip to her ankle. R. 235. Dr. Zimmers prescribed Toradol IM and recommended that Claimant visit a physical therapist and a chiropractor. R. 236. Claimant declined to visit the physical therapist or chiropractor. R. 236.

### 5. Functional Capacity Evaluation ("FCE") by Occupational Therapist Patrick McConnell—July 21, 2008

On July 21, 2008, Claimant participated in an FCE recommended by Dr. Zimmers. R. 310. Patrick McConnell, the occupational therapist ("OT") conducting the evaluation, found that Claimant's cooperation was "consistent with maximal effort . . . as evidenced [] by predictable patterns of movement." R. 310. The OT noted that Claimant reported pain in her left shoulder, left knee, and lower back. R. 310. He also found that Claimant had decreased movement in her neck, left shoulder, and left knee. R. 310. Claimant was found to be unable to safely crouch or kneel and displayed "maximum fatigue with repetitive activity due to high work heart rate." R. 310–11. The OT found that Claimant was able to lift 10 pounds rarely and 5 pounds occasionally

although she tired quickly. R. 311. He recommended that Claimant exercise to enhance her functional abilities. R. 311.

## D.    The ALJ's Decision – November 6, 2009

After a hearing and review of the medical evidence, the ALJ determined that Claimant was not under a disability within the meaning of the Social Security Act at any time between November 1, 2006, the alleged onset date, and March 31, 2008, the date last insured because she engaged in SGA after the alleged onset date, had the ability to perform her former work as a bookkeeper, and had the residual functional capacity ("RFC") to perform a full range of sedentary work. R. 14–19. The ALJ evaluated Claimant's application under the required five-step sequential analysis. R. 15-19.

At step one, the ALJ found that Claimant had engaged in SGA after the alleged onset date of her disability. R. 16. The ALJ noted that Claimant's earnings of $11,000 in both 2005 and 2006 were over the level that is presumed to represent SGA. R. 16; *see* 20 C.F.R. 404.1520(b). He rejected the argument that Claimant's bookkeeping work was not substantial. R. 18. He explained that Claimant's testimony shows that she worked about 200 hours per year and that Claimant introduced no evidence from her former employer indicating that the work was not SGA to override the presumption. R. 17–18. Thus, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act during the relevant time period.[5] R. 17.

---

[5] After finding that a claimant engaged in SGA during the relevant period, an ALJ need not proceed to the next steps in finding that a person is not disabled. 20 C.F.R § 416.920(a)(4) (2011)

At step two, the ALJ found that Claimant's primary sclerosing cholangitis, colitis, and arthritis all constituted severe impairments because they "impose more than minimal limitations on the claimant." R. 16.

At step three, the ALJ found that, through her date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R pt. 404, Subpart. P, App. 1. R. 17.

At step four, the ALJ found that Claimant had the ability to perform her past work as a bookkeeper. R. 18. He considered various pieces of evidence in reaching this conclusion. The ALJ considered Claimant's ability to care for herself, shop, and watch her son's football games while sitting in the stands for two and a half hours as evidence that Claimant "was not prevented from working at a full-time basis at the sedentary level at all times relevant herein." R. 17-18. Further, the ALJ found that medical evidence suggests that her ailments are well controlled and would not prevent her from performing sedentary work. R. 18. The ALJ noted that Claimant's 2008 colonoscopy report showed only "extremely mild" ulcerative colitis and mild inflammation in the colon and that her doctor stated that the colitis was under control. R. 17. The ALJ also considered that Claimant's doctor opined that her arthralgia was "managed very well" by Prednisone. R. 17-18. The ALJ stated that the results of an FCE performed on Claimant by an OT did not support a finding that she could not perform sedentary

---

("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"). However, here, the ALJ continued to analyze the remaining steps.

work because it relied heavily on her subjective complaints of fatigue and recommended that her capacity could be improved through exercise. R. 18.

At Step Five, considering the evidence discussed above, the ALJ found that Claimant had the ability to perform a full range of sedentary work. R. 18

## II. LEGAL STANDARDS

### A.  Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough, but the evidence may be less than preponderance. *Schmidt v. Astrue*, 496 F.3d 833, 841-42 (7th Cir. 2007); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks

evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a disability as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739–40 (7th Cir. 2009). Disability means "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in SGA; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant can perform past relevant work; and (5) whether claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 844, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of her motion for summary judgment: (1) whether there is substantial evidence to support the ALJ's finding that Claimant performed SGA after November 1, 2006; (2) whether the ALJ gave insufficient weight to the findings of an FCE ordered by a treating physician; (3) whether the ALJ properly analyzed Claimant's credibility; and (4) whether the ALJ failed to adequately consider the effects of Claimant's medication.

**A.     The ALJ's Determination that Claimant Engaged in SGA Between November 1, 2006 and March 31, 2008 Is Not Supported by Substantial Evidence, But the Error Is Harmless**

An ALJ will find that a claimant is not disabled under the Social Security Act if she engaged in SGA after the alleged onset date of her disability. 20 C.F.R. § 404.1520(a)(4)(i). SGA is "work activity that involves doing significant physical or mental activities" if it is the "kind of work usually done for pay or profit." 20 C.F.R. § 404.1527(a)–(b). In determining whether a claimant has engaged in SGA, the ALJ will consider claimant's earnings. 20 C.F.R. § 404.1574(a)(1). However, the regulations on earnings "create only a presumption, and they do not relieve an ALJ of the duty to

develop the record fully and fairly." *Dugan v. Sullivan*, 957 F.2d 1384, 1390 (7th Cir. 1992) (quoting *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982)).

Claimant argues that the ALJ did not point to substantial evidence that Claimant engaged in SGA after her revised onset date of November 1, 2006. Pl.'s Mot. [Dkt.# 15] at 15. Although Claimant concedes that the ALJ's finding of SGA in 2005 and 2006 were "arguably well founded," she argues that there is not substantial evidence that she did so after November 1. *Id.* We agree.

In making his finding that Claimant engaged in SGA in 2005 and 2006, the ALJ found that Claimant earned an average of $916 per month in both of those years—higher than the threshold required for a presumption of SGA to arise. R 17. The ALJ also noted that no statements from Claimant's employer had been introduced to show that the employment was not substantial, that Claimant's status as a stay-at-home mother would not interfere with substantial employment during that period, and that Claimant worked as much as 200 hours per year during that time. R. 17–18. However, all of this evidence is most relevant to the time before November 1, 2006. Claimant testified that she has been unable to work since November 1, 2006. R. 35.

There is some evidence on the record that Claimant continued her employment after November 1. For example, Claimant originally testified at the hearing that she performed bookkeeping "through December of 2006." R. 30. However, the ALJ did not refer to any of this evidence. While some of the factors he referenced may tend to show that Claimant engaged in SGA after November 1, 2006, the ALJ did not explain how those factors applied to the time after Claimant testified she stopped working as a

bookkeeper. The ALJ failed to "build a logical bridge" from the evidence to his conclusion that Claimant engaged in SGA after November 1, 2006. *Steele v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Therefore, his conclusion that Claimant engaged in SGA during the relevant time period is not supported by substantial evidence. *Id.*

This mistake, however, is not fatal to the ALJ's opinion. Administrative error may be harmless. A court should not remand a case to the ALJ for further specification when it is convinced that the ALJ will reach the same result. *McKinzey v. Astrue*, 641 F.3d 884, 892(7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir.2010). That would be a waste of time for Claimant, the Commissioner, and the Court. Thus, a court should "look at the evidence in the record to see if [it] can predict with great confidence what the result on remand will be." *McKinzey*, 641 F.3d 884 at 892 (citing *Spiva*, 628 F.3d at 353).

Lack of substantial evidence invalidates the ALJ's finding that Claimant engaged in SGA at step one of the required five-step analysis to determine disability. Although the ALJ could have stopped his analysis at step one, he did not. The ALJ instead continued his analysis of the testimony and medical evidence, and he found Claimant to be not disabled at steps four and five. R. 17–18. These alternative findings are each sufficient to find that a claimant is not disabled under the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(iv)–(v). Since, as discussed below, Claimant has pointed to no reversible error in the ALJ's findings at these steps, it is unnecessary to remand this case to the ALJ for further specification because the result would be the same. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four

determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."); *Smith v. Astrue*, 2009 WL 679654 (E.D. Wis. Mar. 16, 2009) ("[E]ven if the ALJ erred in finding plaintiff's impairments non-severe at step two, the error is harmless given the ALJ's alternate finding . . . that plaintiff could perform various jobs existing in significant numbers in the economy.").

**B.      The ALJ Reasonably Weighed the FCE in Determining Claimant's RFC**

An ALJ makes an RFC determination by weighing all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). However, the ALJ may discount the treating physician's opinion "if it is inconsistent with a consulting physician's opinion, internally inconsistent, or based solely on the claimant's subjective complaints." *Rudicel v. Astrue*, 282 F. App'x 448, 452 (7th Cir. 2008). In any case, an ALJ must give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2).

Claimant argues that because she underwent an FCE by OT Patrick McConnell at the direction of Dr. Lori Zimmers, her treating physician, the findings of the FCE should be given controlling weight. Pl.'s Mot. [Dkt.# 15] at 12. However, the findings of a non-physician therapist are not accorded controlling weight. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (plaintiff was "wrong to argue that a physical therapist's report should be given controlling weight"); *see also* 20 C.F.R. § 404.1513(a) (therapists

are not an acceptable medical source). There is no evidence in the record that Dr. Zimmers approved of or ratified the report of the FCE.

Nevertheless, the report of a therapist is entitled to consideration along with other medical records. *Barrett*, 355 F.3d at 1067. Here, the ALJ gave good reasons for not completely crediting the FCE's conclusions. The ALJ noted that the evaluation relied heavily upon Claimant's subjective complaints of fatigue. R. 18. Even if the FCE were a medical opinion from an acceptable medical source, medical opinions on which an ALJ should rely must be based on objective observations, not merely "a recitation of the claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363 (7th Cir. 2004). Additionally, the ALJ noted that the FCE opined that Claimant could improve her functional capacity through exercise. R. 18.

Claimant argues that the OT's finding that "Ms. Brenner displayed maximum fatigue with repetitive activity due to high working heart beat," R. 311, is an objective finding. Pl's Mot. [Dkt.# 15] at 12. However, this evaluation does not necessarily preclude the ability to perform sedentary work. The ALJ weighed the findings of the FCE against Claimant's testimony that she had the ability to take care of all her own needs, shop, and attend her son's football games. R. 18. He also considered Claimant's doctors' findings that her conditions were mild and controlled by medication. R. 18. Indeed, there is no finding in the record by any treating physician that Claimant was disabled. The ALJ concluded that the weight of the evidence supported a finding that Claimant could perform sedentary work at all relevant times. R. 18. Considering that the FCE was not the opinion of a treating physician and that an ALJ need only

"minimally articulate his or her justification for rejecting or accepting specific evidence of a disability," *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), there is sufficient evidence in the record to support the ALJ's finding.

## C.    The ALJ's Credibility Finding Is Not Patently Wrong

When faced with a claimant alleging subjective symptoms, an ALJ evaluates the credibility of a claimant's testimony about her symptoms. Social Security Ruling ("SSR") 96-7p. The ALJ must consider the testimony in light of the entire record and be sufficiently specific as to the reasons for her credibility determination. *Id.* Because the ALJ is in the best position to observe witnesses, a court will not overturn her credibility findings "as long as they find some support in the record." *Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2008). Thus, the court will overturn an ALJ's credibility determinations only if they are "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given. SSR 96-7p.

Claimant argues that the ALJ erred in not finding her testimony about her ability to work credible. Pl.'s Mot. [Dkt.# 15] at 14. She argues that the ALJ wrongfully considered her testimony that she could attend her son's football games to be inconsistent with her testimony that her pain and fatigue rendered her unable to work. *Id.* While it is true, as Claimant argues, that attending a football game for two and a half hours is not the same as working five days a week, *id.*, her ability to do so is relevant to determining if her pain and fatigue are as debilitating as she claimed. *See Rice v.*

*Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (finding it proper for the ALJ to consider a claimant's activities in assessing the credibility of subjective complaints).

Additionally, this was not the only evidence the ALJ relied on in making his credibility determination. The ALJ observed that Claimant gave inconsistent and evasive answers to questions about her job. R. 17. In a pre-hearing statement, Claimant averred that she spent no more than two workdays a year on her bookkeeping job. R. 17, 117. But at the hearing she stated that she worked as much as 200 hours per year. R. 17, 34. Inconsistent statements are a valid reason to discount the credibility of a claimant. *See Muhammad ex rel. K.M. v. Astrue*, 585 F. Supp. 2d 1023, 1034 (N.D. Ill. 2008) ("Here, the record supports the ALJ's finding that [plaintiff's] testimony was not credible because [plaintiff] made several inconsistent statements during the hearing."). Further, the ALJ stated that Claimant's own testimony that she was able to take care of her own needs, shop, and attend her son's football games was inconsistent with her claims that she suffered too much pain and fatigue to perform sedentary work. R. 18; *See Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994) (claimant's statement of his own activities that were inconsistent with the amount of pain he testified to experiencing supported ALJ's decision not to credit his testimony).

Finally, the ALJ surveyed the medical evidence in the record, noting that doctors had found that Claimant's colitis was "extremely mild" and that her arthralgia was "managed very well" with medicine. R. 17–18. ALJs are directed to consider the opinions of examining physicians in making credibility determinations. SSR 96-7p(4). The ALJ found the medical evidence indicating that Claimant's conditions were well

managed tended to show that Claimant could perform sedentary work, contrary to her testimony that she was unable to do so. R. 18.

This is not a case in which the ALJ's credibility finding lacks any explanation or support. The ALJ gave several reasons for his credibility findings. In light of these articulated reasons, the Court cannot say that the ALJ's judgment is "patently wrong."

**D.    The ALJ's Failure to Make a Finding About the Side Effects of Her Medication Is Not Reversible Error**

In evaluating the credibility of an individual's statement, the ALJ must consider, among other things, the side effects of any medication. SSR 96-7p. Claimant argues that the ALJ erred in not considering the side effects of Prednisone on her ability to work. Pl.'s Mot. [Dkt.# 15] at 14. Claimant took Prednisone intermittently for four years prior to her hearing before the ALJ. R. 39. She testified that she typically takes either Prednisone or Advil in the morning before getting out of bed. R. 42. In her motion for summary judgment, Claimant claims she testified that she "experiences fatigue in part from this medication," but this testimony is not in the record. Pl.'s Mot. [Dkt.# 15] at 15 (citing R. 42). The record indicates that Claimant testified that she experiences "extreme fatigue" and, several questions later, that she takes Prednisone. R. 35, 42. But Claimant never testified that the fatigue was related to the Prednisone. Claimant does not cite any medical evidence to show that she experienced side effects, and a review of the record shows that there is no documentation indicating any side effects from Prednisone. While SSR 96-7p directs the ALJ to consider side effects of medication in determining

RFC, it would have been impossible for the ALJ to do so because there is no evidence of the side effects of Prednisone on the record.

Even if there had been evidence in the record about the side effects of Prednisone, a failure to make a finding about the side effects of a drug, by itself, is not reversible error. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Courts will construe such a claim as an allegation that the ALJ's RFC determination was not based on substantial evidence. *Id.* Here, the ALJ based his conclusion that Claimant had the RFC to perform a full range of sedentary work on a number of facts in the record. He reviewed the medical evidence and found that treating notes and statements from physicians indicated that her gastrointestinal problems were well managed. R. 18. He considered that no physician had advised Claimant that she could not work. R 18. He also noted that Claimant testified that she was able to care for herself, shop, and sit in the stands watching her son's football games for two and a half hours. R. 18. He found that all of these indicated that Claimant had the RFC to perform sedentary work. R. 18. The ALJ's consideration of all these factors demonstrates that his finding was based on substantial evidence.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order,

Claimant Renee T. Brenner's motion for summary judgment [Dkt.# 15] is denied, the

Commissioner's cross-motion for summary judgment [Dkt.# 22] is granted, and the

decision of the Commissioner is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   April 18, 2012